# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| QUINCY DUTCHIN | CIVIL ACTION |
|---|---|
| v. | NO. 18-2873 |
| **STEVEN T. MNUCHIN,** *Secy Dept of Treasury* | |

## MEMORANDUM

Baylson, J.                                                                                                                **March 12, 2020**

## I. INTRODUCTION

Plaintiff Quincy Dutchin filed suit against Defendant Steven T. Mnuchin after supervisors at the U.S. Mint designated Plaintiff absent without leave ("AWOL"), issued him letters of reprimand, and reassigned him to Mint headquarters in Washington D.C. following Plaintiff's internal complaints of race discrimination. After Plaintiff was reassigned, he filed a complaint alleging a single count of Retaliation under Title VII of the Civil Rights Act of 1964. (ECF 1.) Before this Court is Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's motion will be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff served as the IT Branch Chief at the Philadelphia office of the U.S. Mint where he supervised federal employees in the IT Department and oversaw the Mint's outside IT contractors. (ECF 33-8, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summary Judgment, Ex. A, Decl. of Quincy Dutchin ("Pl.'s Decl.") ¶ 3.) Olawole Olayinka supervised Plaintiff, and gave him an overall rating of "excellent" in his first two performance reviews. (Pl.'s Decl. ¶ 4–5; ECF 33-2, Pl.'s Statement of Disputed Material Facts ("Pl.'s SDMF") ¶¶ 4–5.)

Olayinka went on administrative leave in 2015, after which Plaintiff's new supervisor, DeAnna Wynn, gave him lower performance ratings, temporarily removed him from his supervisor position, and placed him on a 120-day reassignment detail. (Pl.'s Decl. ¶ 23; Pl.'s SDMF ¶ 6.) Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging that Wynn was discriminating against him based on his race. (Pl.'s Decl. ¶ 6.) Plaintiff ultimately settled the complaint. (Pl.'s Decl. ¶ 7.)

After the settlement, Wynn accused Plaintiff of creating a hostile work environment for the IT contractors, but she could not provide Plaintiff with any details underlying the contractors' complaints. (Pl.'s Decl. ¶ 24.) Wynn had a subsequent meeting with the contractors, after which they stopped reporting to Plaintiff or attending his bi-weekly meetings. (Pl.'s Decl. ¶ 24.) In Plaintiff's view, after the meeting with Wynn, the contractors became unmanageable. (Pl.'s Decl. ¶ 27.)

Plaintiff's relationship with Wynn continued to deteriorate as Wynn received complaints from officials at the Mint about Plaintiff's Department. (Pl.'s Decl. ¶¶ 21, 29–30; Pl.'s SDMF ¶¶ 12, 14.) Wynn began taking a hands-on approach to managing the Philadelphia IT Department. Wynn met with, and provided guidance to, the employees and contractors in Plaintiff's Department—tactics that Plaintiff became frustrated with. (Pl.'s Decl. ¶¶ 35–36.)

In June of 2017, Wynn issued Plaintiff a letter of reprimand that accused him of failing to comply with the Mint's leave request protocol and failing to follow instructions. (Pl.'s SDMF ¶ 17; Pl.'s Resp. in Opp. to Def.'s Mot. for Summary Judgment, Ex. ("Pl.'s Ex.") 13, Jun. 13, 2017 Letter of Reprimand 1–2.) Less than two weeks later, Plaintiff took pre-approved leave, but Wynn designated him AWOL when she learned that he was not at work. (Pl.'s Decl. ¶ 39; Pl.'s SDMF ¶ 18–19.) It was not until Plaintiff complained to his EEO counselor that Wynn rescinded

Plaintiff's AWOL designation. (Pl.'s Decl. ¶ 39.) Plaintiff filed a second EEO complaint, which alleged that Wynn's letter of reprimand and AWOL charge were retaliation for his previous complaint. (Pl.'s Decl. ¶ 37.)

One of Plaintiff's subordinates, Diane Jackson, complained about Plaintiff to Wynn. (Pl.'s Decl. ¶ 31.) Wynn, Jackson, and Jackson's union representative met without Plaintiff to discuss the complaints, and when Wynn confronted Plaintiff with Jackson's allegations, Plaintiff provided evidence to dispute the assertions. (Pl.'s Decl. ¶ 31.) After Olayinka returned from administrative leave and resumed his role as Plaintiff's direct supervisor, (Pl.'s SDMF ¶ 63), he coordinated with Wynn to initiate an investigation into Jackson's allegations, (Pl.'s Decl. ¶ 31.) After the investigation, Olayinka issued Plaintiff a letter of reprimand for failing to supervise his subordinates, and, in coordination with Wynn, reassigned Plaintiff to Mint headquarters in Washington D.C. (Pl.'s Decl. ¶¶ 32–33.)

Plaintiff filed a Complaint alleging one count of Retaliation under Title VII, (ECF 1), which he later amended, (ECF 15.) Defendant filed a Motion for Summary Judgment, (ECF 30), Plaintiff filed a response in opposition, (ECF 33), and Defendant filed a reply, (ECF 38.)

## III. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. FED. R. CIV. P. 56(c).

## IV. DISCUSSION

Plaintiff's retaliation claim follows the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a prima facie case of retaliation. Carvalho-Grevious V. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a "legitimate non-retaliatory reason" for its course of action. Id. (citing Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006)). Once the defendant articulates such a reason, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse

4

employment action." Moore,461 F.3d at 342 (quoting Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997)).

### A. Plaintiff's Prima Facie Case

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" Id. at 340–41 (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). There is no dispute that Plaintiff met the first prong of his prima facie case by filing an EEO complaint.

Under the second prong, Plaintiff must "show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 341 (quoting Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Plaintiff argues that his forced relocation from Philadelphia to Washington D.C. satisfies this prong of his prima facie case, while Defendant argues that a lateral transfer to another location does not qualify as materially adverse employment action. This Court cannot conclude that, as a matter of law, forcing an employee to relocate to another city against his or her will is not materially adverse. Whether the decision in this case to remove Plaintiff from his post in Philadelphia and relocate him to Washington D.C. would dissuade a reasonable employee from making a charge of discrimination is a question for the jury to resolve.

Plaintiff has also raised a genuine issue of material fact concerning whether there is a causal link between his first EEO complaint and his forced relocation. A causal link between protected activity and an adverse employment action can be shown by demonstrating, among other things, a

pattern of antagonism with the employer, or by identifying inconsistencies in the employer's articulated reason for its action. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232–33 (3d Cir. 2007). Here, Plaintiff has raised evidence demonstrating a pattern of antagonism between him and Wynn that became progressively worse after he filed his first EEO complaint. Plaintiff has submitted evidence showing that Wynn supervised him more closely, issued him a letter of reprimand, and erroneously designated him AWOL after he filed his EEO complaint. (Pl.'s Decl. ¶¶ 35–36, 39; Pl.'s SDMF ¶ 17–20.)

There are also inconsistencies in the record surrounding Defendant's reason for reassigning Plaintiff to Washington D.C. For example, Olayinka asserted that it was his decision, not Wynn's, to reassign Plaintiff to Washington D.C., (Olayinka Dep. 127:4–11), but Wynn told an EEO investigator that "it was her decision to involuntarily reassign" Plaintiff, (Pl.s' Ex. 40, EEO Informal Rept. of Counseling at 4.) In addition, the reassignment memorandum Plaintiff received purported to send him to Washington D.C. because of personnel needs at the Mint, (Pl.'s Ex. 39, August 15, 2018 Reassignment Memorandum at 1), but Wynn told the investigator that Plaintiff was reassigned because of the toxic environment she believed he created in the IT Department, (Pl.'s Ex. 40, EEO Informal Rept. of Counseling at 4.) Plaintiff has raised enough factual issues concerning his prima facie case to survive summary judgment.

### B. Pretext

Assuming Defendant has articulated a legitimate non-retaliatory reason for reassigning Plaintiff to Washington D.C., Plaintiff can survive summary judgment by raising evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reason such that "a reasonable factfinder could rationally find [it] 'unworthy of credence,' and hence infer 'that [Defendant] did not act" for that reason. Fuentes v. Perskie, 32

F.3d 759, 765 (3d Cir. 1994) (citation omitted). If Plaintiff's evidence could cause a reasonable jury to disbelieve Defendant's proffered non-retaliatory reason, Plaintiff can survive summary judgment on the strength of his prima facie case alone. Id. at 764. As outlined above, there is conflicting evidence in the record surrounding Plaintiff's reassignment such that a reasonable jury could decide not to believe the articulated reason for Defendant's action. Instead, a reasonable jury could believe that Defendant's action was pretextual, and find for Plaintiff on his retaliation claim. Generally, Defendant has failed to discuss or otherwise take into account Plaintiff's detailed and comprehensive declaration, which this Court must consider and credit on a Motion for Summary Judgment. Defendant's failure precludes summary judgment in this case.

## V. CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment will be denied. An appropriate Order follows.

O:\CIVIL 18\18-2873 Dutchin v. Mnuchin\18cv2873 Memo re MSJ.docx